**Appellant's Motion for Rehearing Overruled; Opinion of August 7, 2012 Withdrawn; Affirmed as Modified; Substitute Majority and Concurring Memorandum Opinions filed October 25, 2012.**



In The

# Fourteenth Court of Appeals

---

NO. 14-11-00727-CR
NO. 14-11-00728-CR
NO. 14-11-00729-CR

---

**SAMUEL WADE HENDERSON, Appellant,**

**V.**

**THE STATE OF TEXAS, Appellee.**

---

**On Appeal from the 228th District Court
Harris County
Trial Court Cause Nos. 1315583, 1315584, 1315585**

---

## CONCURRING MEMORANDUM OPINION

The majority correctly disposes of appellant's second and third issues. I write separately to address the deficient-performance prong of appellant's first issue concerning his claim that his trial counsel was ineffective during the guilt-innocence phase of his trial. The majority concludes that, because the record is silent regarding trial

counsel's strategy, appellant has not shown that his counsel's conduct was so outrageous that no competent attorney would have engaged in it. *See ante*, at 7–8. The majority opines that "a reasonable strategic motivation can be gleaned from the record," *i.e.*, that appellant's counsel "attempted to advance a strategy to discredit what arguably could have been the most damaging evidence—the DNA evidence linking Henderson to one of the crimes." *See id.* I do not agree that a reasonable strategic motivation for counsel's performance can be gleaned from this record. However, because I join the majority's analysis concluding that appellant was not prejudiced by his counsel's actions, I respectfully concur.

The performance at issue here concerns trial counsel's statements during opening argument in which counsel informed the jury that police investigators discovered appellant's DNA at "an alleged rape in October of 2000 — of 1990," but that appellant could not have committed that offense because, at the time, he was "incarcerated." In effect, appellant's trial counsel described two extraneous offenses linked to appellant during his opening argument: (1) a sexual assault that occurred in October of 1990 through which appellant's DNA was identified; and (2) some other offense for which appellant was incarcerated in 1990.

But even the most cursory investigation would have revealed that trial counsel's "strategy" was doomed to failure: appellant was *not* incarcerated at the time of the October 1990 sexual assault.[1] Not only did appellant himself testify that he was not incarcerated at this time, but this fact was proven by the testimony of one of the State's investigators, through a particularly damning series of questions posed on cross-examination by appellant's counsel:

> Q. What was the original biological evidence that caused you to suspect Mr. Henderson? Where did it come from?

---

[1] Trial "counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Wiggins v. Smith*, 539 U.S. 510, 521–22 (2003).

A.     It came to my attention from Lieutenant Waterhall via the Houston Crime Lab.

Q.     And when was that biological — when — where did it come from?

A.     I don't know where it came from, sir.

Q.     Okay.  Well, isn't it true that it came from an alleged rape case that occurred when Mr. Henderson was in prison that would be impossible for him to have committed?

A.     No that's not true at all.  And to my knowledge, Mr. Henderson was not in prison at the time of the rape case that you're mentioning.

Q.     Okay.  What was the date of the rape case?

A.     October of 1990, I believe.

Q.     And he was — okay.  And Mr. Henderson was in prison at that time; is that correct?

A.     To my knowledge, he was not.  But —

Q.     To your knowledge, he was not.

Do you know whether he was in prison or not?

A.     According to the records that I viewed Mr. Henderson was free at that time.

Q.     Okay.  What records are you talking about?

A.     His criminal history records from the Texas DPS database.

Q.     Do you have — do you have access to those records?

A.     I do.

Q.     Okay.  And you will — how can I get access to those records?

A.     How?

Q.     Yes.

3

A. I believe our prosecutors have a copy.[2]

When we have no direct evidence regarding counsel's motivations, we must assume that counsel had a strategy if any reasonably sound strategic motivation can be imagined. *Lopez v. State*, 343 S.W.3d 137, 143 (Tex. Crim. App. 2011). Under the facts of this case, however, I cannot imagine any reasonably sound strategic motivation for appellant's trial counsel to inform the jury of appellant's possible involvement in two extraneous offenses. In fact, one of these offenses—sexual assault—is of a similar nature to the offense for which appellant was on trial. Appellant's counsel did not simply fail to object to inadmissible evidence;[3] instead, appellant's counsel referenced this inadmissible evidence in his opening argument and then elicited evidence that his stated defensive "strategy" was not true. I believe that this is one of those rare cases in which trial counsel's deficient performance is apparent from the record. *Lopez*, 343 S.W.3d at 143.

Although I do not join the entirety of the majority's analysis regarding appellant's first issue, I respectfully concur in the court's decision to overrule appellant's ineffective assistance of counsel challenge and affirm the judgment of the trial court.

/s/     Adele Hedges
Chief Justice

Panel consists of Chief Justice Hedges and Justices Seymore and Brown. (Brown, J., Majority).

Do Not Publish — Tex. R. App. P. 47.2(b).

---

[2] This investigator was recalled by the State to confirm that appellant was on parole in October 1990.

[3] *See Ex parte Menchaca*, 854 S.W.2d 128, 132 (Tex. Crim. App. 1993) (concluding that there was no strategic basis for permitting jury to hear testimony regarding applicant's prior conviction for similar offense).